ELY SIEGEL & another *vs.* PAUL P. STARZYK.

Hampden.　February 28, 1921. — April 6, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Way,* Private. *Easement. Equity Jurisdiction,* To enjoin obstruction of private way, Damages.

In a suit to enjoin the obstruction of a private right of way, it appeared that the plaintiff had a right of way ten feet wide from land owned by him over land of an adjoining landowner to and connecting with the private way on the land of ·the defendant, which connected with a public way upon which the parcels of both parties abutted. This way over the defendant's land was twenty-five feet wide and the plaintiff by deed had been given a right to use it "for the purposes incident to the use and enjoyment" of his land. A master to whom the suit was referred found that the defendant began altering and extending a building on his premises in the latter part of July of a certain year, erected a high board fence blocking the way where it connected with the public way, leaving a gate therein as wide as half of the way, excavated half of the way and planned to reduce the way by half of its width; that the plaintiff had a conversation with the defendant on August 25 in which he asserted his rights; that the defendant then suspended operations within the limits of the way and that, after fruitless attempts of counsel for the parties to adjust the controversy, the suit was brought on December 15; that the carrying out of the plans of the defendant would result in a damage to the plaintiff amounting to $1,000 and that to the date of the finding no damage had resulted to the plaintiff. A judge, who heard the suit on the pleadings and master's report, found that the defendant had not intentionally invaded the plaintiff's rights, that the narrowing of the

way would not so seriously impair the plaintiff's use of the way that he could not be compensated in damages and that to restore things to the condition in which they were before the acts complained of would subject the defendant to great inconvenience and loss; and by the judge's order a final decree was entered awarding the plaintiff $1,000 damages, directing the removal of the gate and denying further relief. The plaintiff appealed. *Held*, that

(1) The plaintiff's easement was commensurate with the entire width of twenty-five feet;

(2) The plaintiff had seasonably asserted his rights;

(3) The plaintiff should not be compelled to surrender his easement in part for a valuation although the pecuniary benefit to the defendant of such a surrender might outweigh any disadvantage to the plaintiff;

(4) The decree should be reversed, nominal damages should be assessed to the plaintiff and the defendant should be directed to restore the way to its original condition and should be permanently enjoined from obstructing or interfering with the plaintiff's lawful use of it within the entire limits as granted.

BILL IN EQUITY, filed in the Superior Court on December 16, 1919, to enjoin the obstruction of a right of way.

The suit was referred to a master. Material findings of the master as to the nature of the titles of the parties are described in the opinion. His findings as to the acts of the defendant in obstructing the way were as follows:

"In July, 1919, the defendant began extensive alterations in the Cabot Hall Block. The corner of Exchange and Center streets is probably the best business location in Chicopee. In front of the building on the Center Street side is the public square on which face the city hall and public library. If the defendant's plans for remodeling his building are carried out it will become the best business building in that section of the city.

"The defendant's plans included the putting of a new facing of tapestry brick on the two sides of his building facing the streets, the enlargement of four stores on the ground floor by extending them back into the passageway area twelve and one half feet, the entire readjustment of the interior arrangement of the second and third floors, the making of a fourth story covered with a flat roof in the space where the old attic was covered by a hip roof and the raising of the extension into the passageway on the Exchange Street end and for thirty feet back from Exchange Street to the height of the new roof over the fourth story.

"In the latter part of July, 1919, operations began. A high board fence was built from the corner of Center and Exchange streets along the line dividing the sidewalk from the roadway

westerly to the southwesterly corner of the building and thence
diagonally across the sidewalk to the southeasterly corner of the
building on the parcel above designated as the Kendall parcel.
The westerly half of that part of this fence, which was opposite
the passageway, was fitted to swing like a gate. This gate was
made of four horizontal boards with a diagonal brace and the
public on the highway could easily see over the gate and between
the spaces in the boards what might be going on in the passage-
way area.

"Before the first of August the defendant began to excavate
the easterly half of the passageway for the putting in of the foun-
dation and cellar walls of the new addition. . . . Right after . . .
[a talk between one of the plaintiffs and the defendant] about
August 25 the defendant stopped operations on that part of the
premises within the limits of the passageway and both the plain-
tiffs and the defendant sought legal counsel. Counsel for both
parties attempted to adjust the differences. Further work within
the limits of the passageway were suspended pending negotiations
until December 15, 1919, when, the plaintiffs apparently despair-
ing of arriving at an agreement with the defendant, this bill of
complaint was filed.

"The condition of affairs within the limits of the passageway,
as they are today and have been since the interview between
Ely Siegel and the defendant about August 25, 1919, is as follows:
The land has been excavated for fourteen feet westerly of the
westerly line of Cabot Hall Block and for the entire length of
the building to the depth of the level of the cellar floor of the
block or about six feet. A new foundation wall has been built
along the Exchange Street side of the passageway area about
twelve and a half feet and then northerly parallel with the westerly
wall of the Cabot Hall Block for the full length of the wall for
about eighty-eight feet. On the Exchange Street side and for
about half its length this wall has reached a height about one
foot below the surface of the passageway. Northerly of that
the wall is not so high. At no point has it yet been erected to
the height of the level of the passageway, and no work of any
kind in the building of this extension of the building has yet
been carried to the height of the level of the passageway.

"When the defendant bought his property he had no investi-

gation made of the records at the Hampden County Registry of Deeds relative to the title of the premises.

" At the request of the defendant I find and report for consideration, if it be deemed material, that before the defendant began theremodelling of his building he conferred with all of the abutters on the twenty-five foot way whom he thought had any interest therein and all of them consented to his extending his building over the easterly half thereof. He did not discuss the matter with either of the plaintiffs.

"I find that if the defendant erects the addition to his building over the easterly half of the passageway, as he contemplates doing and as above set forth, the plaintiffs will be deprived of the use of the easterly half thereof and such deprivation will be a damage to them in their property in the sum of one thousand dollars. I find that the plaintiffs have suffered no substantial damage by reason of the presence of the above mentioned obstructions in the passageway from July, 1919, to this date and that at most they are entitled to only nominal damages therefor."

The plaintiffs excepted to the report because the master refused to make certain findings of facts requested by them and also moved that the report be recommitted for the finding of such facts. The defendant excepted to the report by reason of a ruling admitting certain evidence as to city ordinances.

The suit was heard by *Callahan,* J. He filed a memorandum in which, besides determining that the motion to recommit should be denied, that exceptions of both parties should be overruled and that the report should be confirmed, he found and ruled as follows:

"1. From the facts found by the master that the properties of the parties are two hundred feet apart, that the defendant had not examined the title to his land, that he had conferred with all the abutters on the passageway who he thought had any interest therein and had obtained the consent of all of them to the contemplated extension, that the plaintiffs' right of way in the rear of the Kendall property for a distance of about two hundred feet was but ten feet wide and yet the defendant intended to leave twelve and a half feet of the width of the passageway free from obstruction, and that the defendant immediately suspended his operations when one of the plaintiffs asserted their

claim to the free width of the way, I infer and find as a fact that the defendant did not intentionally invade the right of the plaintiffs, but, on the other hand, in good faith mistakenly believed himself to be within his rights up to the time he received the notice referred to.

"2. I further find and rule that the plaintiffs' use of the passageway has not been and will not be seriously impaired by the proposed extension and that, so far as it may be impaired, the injury may be readily compensated in damages.

"3. I also find that 'to restore things as they were before the acts complained of would subject the other party to great inconvenience and loss.'

"4. At the hearing before me it was agreed that evidence was offered to the master, which if taken to be true would warrant him in finding that the proposed extension would prevent the passage of a truck of the dimensions mentioned in paragraph 1 of the plaintiffs' motion to recommit, but it was not agreed or shown that evidence was offered to him that the use of a truck of such size fell within 'the purposes incident to the use and enjoyment of the . . . block and lands.' Moreover, if at a further hearing the master should find in favor of the plaintiffs on this issue, it would not affect my second finding. . . .

"8. In my opinion the plaintiffs are entitled to a decree awarding them damages in the sum of $1,000, with interest from the date of the bill and their costs and ordering the defendant to remove the gate and fence at the entrance to the passageway in Exchange Street but denying them the other injunctive relief prayed for.

"Decree accordingly."

Interlocutory decrees and a final decree were entered accordingly; and the plaintiffs appealed.

The case was submitted on briefs.

*R. A. Bidwell*, for the plaintiffs.

*J. L. Doherty, J. H. Jones & W. H. McCarthy*, for the defendant.

BRALEY, J. It appears from the master's report, where the title of the parties is fully stated, that the defendant is the owner of a parcel of land in Chicopee on the northwesterly corner of Center and Exchange streets on which is a building referred to as the Cabot Hall block or building, and a parcel designated as

the Kendall property lies westerly on Exchange Street, and westerly of the Kendall parcel comes the plaintiffs' land measuring about forty feet on the street with a depth of about one hundred feet. The defendant's title is derived under a deed to one Woodward by the Ames Manufacturing Company, dated April 1, 1847, which recites ". . . that the passage of twenty-five feet in width between the back side of said building and said Wait's line shall be kept open and unencumbered with buildings forever." It is found that the building referred to is the Cabot Hall block, and the Wait line, is the line dividing the defendant's land from the Kendall property. By mesne conveyance of Woodward to Jerome Wells, and the subsequent intestacy of Wells, Georgiana L. Doten, his only heir at law, became seised of the land now owned by the defendant, and she with Joseph E. Patrick, who owned the land now held by the plaintiffs, and Kendall, who owned the land between, executed and delivered on December 5, 1881, a deed wherein Patrick released to Kendall his easement of way over Kendall's land, and Doten granted to Patrick, his heirs and assigns, "the right to use the passageway upon the land in the rear of 'Cabot Hall' building . . . for the purposes incident to the use and enjoyment of the said block and lands of said Patrick . . . and said Kendall . . . grants said Patrick a right of way ten feet wide in the rear of the new block he is now building on the Northerly side of Exchange Street . . . connecting the land of said Patrick . . . with the way heretofore granted him by Georgiana L. Doten, said right of way to be used . . . for all purposes incident to the use and enjoyment of said lands and block . . . said Doten is to be permitted to extend a stairway eight feet into the passageway. The building next to Patrick not to be erected higher than one story where the right of way now exists in said Patrick." And the deed of Doten to the defendant provides "that the passageway of twenty-five feet in width between the back side of said building and said Wait's line shall be kept open and unencumbered with buildings forever." The master finds that the "ten foot way and the twenty-five foot way intersect at an angle of about ninety degrees," and that title to the open space of about twenty-five feet between the buildings is in the defendant, who in July, 1919, closed the way where it entered Exchange Street by a high board fence with a

gate, and began an extensive remodeling of the Cabot Hall block easterly into and across the passageway.

The defendant's only substantial contention is, that, although the plaintiffs are entitled to damages as assessed by the judge, injunctive relief should be denied. The master, however, states that the passageway in the rear of "Cabot Hall building" is "the passageway of twenty-five feet in width between the back side of said building" and the line dividing the defendant's land from the Kendall property. The way is fixed and definite. It is bounded easterly and westerly by the brick walls of the buildings known as the Cabot Hall block and the Kendall property, and therefore the plaintiffs' easement is commensurate with the entire width of twenty-five feet. *Salisbury* v. *Andrews,* 19 Pick. 250. *Welch* v. *Wilcox,* 101 Mass. 162. *Tucker* v. *Howard,* 122 Mass. 529. *Nash* v. *New England Mutual Life Ins. Co.* 127 Mass. 91.

While the defendant as owner of the fee can excavate below the surface, if thereby he does not interfere with the plaintiffs' right of passage, *Kendall* v. *Hardy,* 208 Mass. 20, he cannot lawfully erect and maintain the fence and gate, or make excavations in the surface of the way to a depth of six feet for the purpose of putting in the foundation walls of the proposed addition to, or enlargement of the old building, even if the wall in process of construction is about a foot below the surface, and at no point has as yet reached the level of the way.

The plaintiffs on the master's report having seasonably asserted their rights, should not be compelled to surrender their easement in part at a valuation, because the pecuniary benefit of the defendant may outweigh any disadvantage suffered by them in having the way narrowed to one half of the grant, which even then would be somewhat wider than the connecting way.

We are accordingly of opinion that the final decree limiting the plaintiffs to money damages and to the removal of the gate and fence should be reversed, and a decree with costs is to be entered awarding nominal damages, and directing the restoration of the passageway to its former condition, and permanently enjoining the defendant from obstructing or interfering with the plaintiffs' lawful use of the way within the limits described in the bill. *Tucker* v. *Howard,* 122 Mass. 529. *Nash* v. *New England Mutual Life Ins. Co.* 127 Mass. 91. *Boland* v. *St. John's*

*Schools,* 163 Mass. 229. *O'Brien* v. *Goodrich,* 177 Mass. 32. *O'Brien* v. *Murphy,* 189 Mass. 353. *Downey* v. *H. P. Hood & Sons,* 203 Mass. 4. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448. *Kershishian* v. *Johnson,* 210 Mass. 135. *Szathmary* v. *Boston & Albany Railroad,* 214 Mass. 42. *Draper* v. *Varnerin,* 220 Mass. 677. *Wellington* v. *Rawson,* 231 Mass. 189. *Congregation Beth Israel* v. *Heller,* 231 Mass. 527.

The interlocutory decrees overruling the exceptions to, and confirming the report, and denying the plaintiffs' motion to recommit are severally affirmed.

*Ordered accordingly.*